```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                                                   :
BERNARD WILKERSON,                                                 :
                                                                   :
                                    Plaintiff,                     :
                                                                   :                19-cv-9340 (LJL)
                -v-                                                :
                                                                   :                OPINION AND ORDER
METROPOLITAN TRANSPORTATION                                        :
AUTHORITY, et al.,                                                 :
                                                                   :
                                                                   :
                                    Defendants.                    :
                                                                   :
-------------------------------------------------------------------X
```

LEWIS J. LIMAN, United States District Judge:

Plaintiff Bernard Wilkerson ("Wilkerson" or "Plaintiff") moves for reconsideration of the Court's Opinion and Order, Dkt. No. 49, granting in part and denying in part the motion for summary judgment by defendants Metropolitan Transportation Authority ("Transit") and Richard John ("John," and collectively with Transit, "Defendants").

For the following reasons, the motion for reconsideration is denied.

## LEGAL STANDARD

"A motion for reconsideration should be granted only if the movant identifies 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Spin Master Ltd. v. 158*, 2020 WL 5350541, at *1 (S.D.N.Y. Sept. 4, 2020) (quoting *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013)); *see also Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) ("The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the

conclusion reached by the court."). Reconsideration of a court's previous order is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *In re Health Mgmt. Sys., Sec. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000) (citation omitted). It is not a "vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)).

## DISCUSSION

On December 17, 2021, Defendants moved for reconsideration of the Court's holding denying summary judgment on Plaintiff's Title VII failure to accommodate and his related NYCHRL and NYSHRL aiding and abetting claims. Defendants filed a motion for reconsideration on December 17, 2021. Dkt. No. 49. Plaintiff filed his opposition on January 18, 2022, Dkt. No. 55, and Defendants filed a reply on February 6, 2022, Dkt. No. 56. Defendants argue that they should have prevailed on summary judgment because "granting Wilkerson his preferred assignment would violate the bargained-for right of employees in the construction flagging unit to select, or 'pick,' their assignment in order of seniority." Dkt. No. 52 at 1–2.

**I.    Background**

Familiarity with the Court's prior Opinion and Order granting in part and denying in part Defendants' motion for summary judgment, Dkt. No. 49, is assumed. The facts of the case are set forth in full therein. As relevant here, the Court denied Defendants' motion for summary judgment on Plaintiff's Title VII failure to accommodate and his related NYCHRL and NYSHRL aiding and abetting claims. Plaintiff, who is an observant Muslim, brings claims against Transit, his employer, and John, his supervisor. Plaintiff worked as a construction

flagger and could not comply with the requirement that construction flaggers wear a respirator because the beard he wears as a tenet of his faith interferes with his ability to use a respirator. Plaintiff's failure to accommodate claims allege that Defendants failed to offer him a reasonable accommodation for this requirement.

### A. The Transit Seniority System

As outlined in the Court's prior Opinion and Order, there is a collective bargaining agreement between Transit and Local 100 of the Transport Workers Union of America (the "Union"), of which conductors at Transit are members, subject to which conductors "pick," or select, their job assignments. There are two components to the selection process. First, conductors may "pick" between four broad job assignments—road service coordinator, platform conductor, hand switching, and construction flagging—as well as inter-office positions, such as mail delivery. Second, within the construction flagging assignment—which Plaintiff first picked in or around 2003—construction flaggers, in order of their seniority, select from a weekly list of available projects their "preferred" location, shifts, and regular days off. There is no guarantee that construction flaggers will be granted their preferred locations, shifts, and regular days off. Since a construction project may be affected on any given day by delays in obtaining necessary materials, equipment failure, inadequate coordination of the work among subcontractors, and other factors, flaggers may be assigned by management to locations and shifts without regard to their weekly picks. There are, on average, fifty-five capital construction projects in progress during the course of any given week and about 700 construction flaggers employed with Transit.

### B. The Respirator Requirement and Wilkerson's Reasonable Accommodation Claim

Plaintiff's reasonable accommodation claims focuses on Transit's respirator requirement. When he began working as a construction flagger in 2003, there was no requirement that

construction flaggers wear a respirator. However, some of the work of construction flaggers requires them to be in proximity to trains powered by diesel-engine locomotives—the parties dispute whether this is true for the majority of the work. In turn, some diesel-engine locomotives—specifically, the R156 engines that MTA purchased in 2014—emit exhaust containing toxic gases. In 2014, Transit's Office of System Safety determined that employees performing work in proximity to those engines were exposed to nitrogen dioxide and must use a respirator.

Plaintiff first attended a respirator class in 2013; at that time, respirators were not yet required for construction flaggers and were provided on a voluntary basis. At the class, Plaintiff was informed by the instructor that the beard he wears as a tenet of his faith may interfere with his ability to use a respirator. The instructor informed Plaintiff that he would be able to use an alternative respirator called a PowerAir-Purifying Respirator ("PAPR") to accommodate his facial hair and that he would not need to be clean-shaven for the PAPR. Plaintiff was issued a full facemask and was told that he would be receiving a PAPR in the future. Plaintiff continued to attend the respirator class every year; each year he was told he would receive a PAPR, but he never received one.

In 2018, Plaintiff attended a respirator class, as he did each prior year. When he arrived at the class, he was provided with shaving cream and a razor and was instructed to shave or leave the class. He explained that he wore a beard in compliance with his faith and declined to shave. He was informed by the instructor that John, the General Superintendent, had stated that any construction flagger attending the respirator class must be clean shaven.

Plaintiff returned to his work site and informed his supervisor that he was removed from the class. He then called John and told him what happened; John responded, "I can't tell you

4

what religion to practice, but you can't practice that there at construction flagging." Plaintiff was called into the crew office and informed that he was not going to be paid for that day. The following day, he was removed from his construction flagging role and placed in the role of platform conductor pending the next "pick."

**II.     Analysis**

Defendants' motion for reconsideration relies heavily on *TWA v. Hardison*, 432 U.S. 63 (1977). In *Hardison*, Hardison—the respondent—was employed by Trans World Airlines ("TWA")—the petitioner; because of his religious beliefs as a member of the Worldwide Church of God, he could not work on the Sabbath—from sunset on Friday until sunset on Saturday. 432 U.S. at 67–68. Employees of TWA were "subject to a seniority system contained in a collective-bargaining agreement," which was "implemented . . . through a system of bidding by employees for particular shift assignments as they become available." *Id.* at 67. Under that system, "[t]he most senior employees have first choice for job and shift assignments, and the most junior employees are required to work when the union steward is unable to find enough people willing to work at a particular time or in a particular job to fill TWA's needs." *Id.* The Supreme Court held that "TWA was not required by Title VII to carve out a special exception to its seniority system in order to help Hardison to meet his religious obligations." *Id.* at 83.

Defendants argue that the same reasoning applies here—they were not required to carve out an exception to Transit's seniority system to accommodate Plaintiff's religious beliefs, and "[t]he employer is not required to make any further showing in order to prevail on a summary judgment motion." Dkt. No. 52 at 2.

Defendants' argument, however, disregards the differences between the factual record in *TWA* and in this case. In *Hardison*, the Court noted a true conflict with the seniority system only arose when Hardison transferred from one placement to another, which had a separate seniority

5

list; "while in Building 1 Hardison had sufficient seniority to observe the Sabbath regularly, he was second from the bottom on the Building 2 seniority list." *Hardison*, 432 U.S. at 68. Despite this conflict, TWA did not immediately take action. Rather, they "agreed to permit the union to seek a change of work assignments for Hardison"; it was the union, not the employer, who "was not willing to violate the seniority provisions set out in the collective-bargaining agreement." *Id.* The Court further highlighted that "Hardison had insufficient seniority to bid for a shift having Saturdays off." *Id.* "There were no volunteers to relieve Hardison on Saturdays, and to give Hardison Saturdays off, TWA would have had to deprive another employee of his shift preference at least in part because he did not adhere to a religion that observed the Saturday Sabbath." *Id.* at 81.

      The record that was before the Court on summary judgment contained no similar factual grounding for the ruling to which Defendants argue they are entitled. As noted in the Court's prior Opinion and Order, there is a factual dispute as to how many of the construction flagging assignments in fact required a respirator. Defendants point to no evidence of Wilkerson's seniority. Defendants asserted in their summary judgment briefing that "there are occasions when no outside work is available," but the portions of the record cited to do not support that assertion. *See* Dkt. No. 46 at 7; *see also* Dkt. No. 29 ¶¶ 4, 7 (stating only that "[a]n employee may not have sufficient seniority to pick an assignment not requiring a respirator, or no such assignment may exist during any period of time," but providing no context on whether the latter indeed happens, and if so, with what frequency); Dkt. No. 42, Ex. 2 at 45 (Wilkerson testifying that his shift times have been switched "many times" but not mentioning anything with regard to switches between outside and underground work); Dkt. No. 49 at 22–23 (considering, in deciding the motion summary judgment, the conflicting evidence on this question). Moreover,

the record makes clear that not all underground work involves proximity to the R156 diesel-powered locomotives, which emit toxic fumes. *See* Dkt. No. 29 ¶ 5. Defendants also point to no evidence in the record suggesting that Transit attempted to work out any accommodation with the Union before apparently concluding that it was impossible to make such an accommodation without breaching the collective bargaining agreement.

On this sparse factual record, Defendants have not carried their burden in demonstrating an entitlement to summary judgment. *Hardison* does not stand for the proposition that as long as there is a collective bargaining agreement in place, an employer can refuse to even consider whether it can make a reasonable accommodation for an employee's religious beliefs. In *Hardison*, the conflict between Hardison's religious beliefs and the collective bargaining agreement was an immediate and irreconcilable one. Hardison did not have the seniority level he would need to pick shifts that would avoid the issue, and other employees did not want the Friday night and Saturday shifts either. The District Court found, after a bench trial, that the defendant employer "had done all that could reasonably be expected within the bounds of the seniority system." *Hardison*, 432 U.S. at 77. Here, in contrast, on the record before the Court, the conflict between Plaintiff's religious beliefs and the respirator requirement is a purely theoretical one. Many open factual questions remain for trial. Plaintiff may have had a high enough seniority level to pick shifts that did not involve proximity to the R156 locomotives. Those shifts that did involve such proximity may have been few and far between. Other employees may have wanted to take on those shifts for various reasons. The record contains no undisputed evidence of a concrete conflict between Plaintiff's religious beliefs and the seniority system. As such, unlike in *Hardison*, Defendants cannot rely on that system at this stage of the

7

litigation to justify their decision to transfer Plaintiff out of construction flagging because of his religious beliefs.

The remaining cases cited by Defendants reinforce this distinction. As the Supreme Court articulated it in *U.S. Airways, Inc. v. Barnett*, "to show that a requested accommodation conflicts with the rules of a seniority system is ordinarily to show that the accommodation is not 'reasonable.'" 535 U.S. 391, 394 (2002). Defendants have not made the former showing on this record. In *Barnett*, a case which considered whether an employer could have a made a reasonable accommodation for the plaintiff's disability, the plaintiff had used his seniority status to acquire a "less physically demanding mailroom position" after he was injured. *Id.* However, two years later, he "learned that at least two employees senior to him intended to bid for the mailroom job." *Id.* At that point, a concrete conflict existed between the accommodation he sought—the ability to continue working in the mailroom—and the seniority system. The factual record here is not apposite. There is no evidence of a single instance where Plaintiff did not have the seniority status required to select his preferred assignments, those that would not require proximity to R156 locomotives, nor is there concrete numerical evidence supporting an inference that such instances would be inevitable.

In *Cosme v. Henderson*, the Second Circuit's opinion begins: "Obedience to the biblical injunction contained in the 4th Commandment 'Remember to Keep Holy the Sabbath Day,' and on it to do no work, *directly conflicts*, on this appeal, with appellant's work schedule at his employment . . . ." 287 F.3d 152, 154 (2d Cir. 2002) (emphasis added). In *Cosme*, the plaintiff's shift required Saturday work every week, which he could not perform in accordance with his religion. *Id.* at 155. Here, once again, the undisputed record does not support a finding that

Wilkerson's work assignment consistently—or ever—would require him to work in proximity to a R156 locomotive such that he would need to wear a respirator.

In *Genas v. State of N.Y. Correctional Services*, 75 F.3d 825 (2d Cir. 1996), the plaintiff, who observed Sabbath in accordance with his religion, was allowed to voluntarily swap shifts with other employees, *id.* at 832. Here, the record does not indicate that such an accommodation was ever offered, nor does it support an inference—unlike, for example, the factual record in *Hardison*—that such an accommodation would not fix any potential conflict.

As another court in this Circuit observed, "[s]ome courts have broadly applied the Supreme Court's decision in *Hardison* to, in effect, grant employers *carte blanche* to avoid eliminating a religious conflict for employees under [a seniority system under a collective bargaining agreement]." *Jamil v. Sessions*, 2017 WL 913601, at *9 (E.D.N.Y. Mar. 6, 2017). Such an expansive reading, however, is not compelled by the Supreme Court's reasoning in *Hardison*, *Barnett*, or by any of the other cases Defendants cite. Those cases do not allow an employer to invoke a purely hypothetical conflict between a seniority system and an employee's religious beliefs to justify transferring that employee out of their preferred department or taking any other adverse employment action absent evidence of a concrete conflict that could not be resolved without violating the seniority system. While Defendants are not obligated by Title VII to violate the seniority system to accommodate Plaintiff's religious beliefs—and Defendants may offer such a theory as a defense to the failure to accommodate claims at trial, as in *Hardison*, if it is supported by the evidence—the record before the Court on the motion for summary judgment does not entitle Defendants to summary judgment on this ground.

## CONCLUSION

The motion for reconsideration is DENIED.

The Clerk of Court is respectfully directed to close the motion at Dkt. No. 49.

SO ORDERED.

Dated: June 17, 2021
      New York, New York

_____
          LEWIS J. LIMAN
     United States District Judge